Filing # 20411644 Electronically Filed 11/10/2014 05:05:49 PM

## IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT IN AND FOR SARASOTA COUNTY, FLORIDA

**MARK SMOTKIN,**
**3060 Grand Bay Boulevard (Unit #131)**
**Longboat Key, Florida 34228,**

    **and**

**DANIELLE SMOTKIN,**
**3060 Grand Bay Boulevard (Unit #131)**
**Longboat Key, Florida 34228,**

        **Plaintiffs,**

    **v.**

                            Civil Action No. *2014-CA-006492-NC*

**CVS HEALTH CORPORATION,**
**d/b/a CVS,**
**One CVS Drive**
**Woonsocket, Rhode Island 02895**

    **Serve:  The Corporation Trust Company**
             **Corporation Trust Center**
             **1209 Orange Street**
             **Wilmington, DE 19801**

    **and**

**MARYLAND CVS PHARMACY, L.L.C.,**
**351 West Camden Street**
**Baltimore, Maryland 21201**

    **Serve:  The Corporation Trust Inc.**
             **351 West Camden Street**
             **Baltimore, MD 21201**

            **Defendants.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Mark L. Smotkin and Danielle Smotkin, by undersigned counsel, for their Complaint against Defendants CVS Health Corporation, d/b/a CVS ("CVS"), and Maryland CVS Pharmacy, L.L.C. ("Maryland CVS"), jointly and severally, state as follows:

"A"

## JURISDICTION

1.      The Court has subject matter jurisdiction herein under Fla. Stat. §§ 26.012(2)(a) and 34.01(1)(c) in that this is an action in which the matters in controversy exceed the sum of $15,000.00, exclusive of interests and costs.

2.      The Court has personal jurisdiction over each Defendant under F.S.A. § 48.193.1.6.b. as each Defendant caused injury to Plaintiffs within the State of Florida arising out of acts or omissions of each Defendant, directly or for which the Defendant is derivatively liable, and, at or about the time of the injury, products, materials, or things processed, serviced, or manufactured by the Defendants were used or consumed within this state in the ordinary course of commerce, trade, or use.

## PARTIES

3.      Plaintiff Mark Smotkin now and at all times mentioned in this complaint was of full age and a citizen of the United States with a residence address of 3060 Grand Bay Boulevard (Unit #131), Longboat Key, Sarasota County, Florida.

4.      Plaintiff Danielle Smotkin now and at all times mentioned in this complaint was of full age and a citizen of the United States with a residence address of 3060 Grand Bay Boulevard (Unit #131), Longboat Key, Sarasota County, Florida.

5.      At all times relevant hereto, Plaintiffs Mr. and Mrs. Smotkin were and are now legally married.

6.      At all times relevant hereto, Defendant CVS is and was a corporation which through its retail division, CVS/pharmacy, operates a chain of drug stores throughout the United States providing retail pharmaceutical services and products through its employees and/or real and/or ostensible agents to those in need thereof including the Plaintiff Mark Smotkin. The drug

stores thus operated by Defendant CVS include but are not limited to Defendant Maryland CVS's drug store at 7955 Tuckerman Lane, Rockville, MD, in Montgomery County, Maryland.

7.     At all times relevant hereto, Defendant Maryland CVS is and was conducting business, among other places, at 7955 Tuckerman Lane, Rockville, MD, in Montgomery County, Maryland.  Maryland CVS's scope of business includes providing retail pharmaceutical services and products through its employees and/or real and/or ostensible agents to those in need thereof including the Plaintiff Mark Smotkin.

## FACTS COMMON TO ALL COUNTS

8.     On or about December 4, 2013, Plaintiff Danielle Smotkin went to the CVS Pharmacy Store #1449, located at 7955 Tuckerman Lane, Rockville, MD, to have Mr. Smotkin's prescription for Lisinopril refilled and were assisted on information and belief by pharmacist Charles Myers.

9.     At the time the prescription was refilled on December 4, 2003, Mr. Smotkin was a 59 year old male in excellent health and adhered conscientiously to a demanding exercise regimen.

10.     It was later determined that the bottle of medication handed to Mrs. Smotkin on December 4 as a refill of Mr. Smotkin's prescription for Lisinopril was incorrectly filled by Defendants with Ambien 12.5 mg.

11.     On the morning of December 22, 2013, while in Longboat Key, FL, Mark Smotkin began taking the Lisinopril prescription, unaware that it had been incorrectly filled by Defendants.

12.    Shortly afterwards, Mr. Smotkin, still unaware of the error, began to drive the family automobile with Mrs. Smotkin in the front passenger seat and their daughter in the rear seat.

13.    While driving the family car, Mr. Smotkin unexpectedly and suddenly became disoriented, lost coherency, experienced double vision, looked dazed, and began driving dangerously.

14.    Mrs. Smotkin and the Plaintiffs' daughter were tremendously frightened for both their own and Mr. Smotkin's safety because Mr. Smotkin, now rendered incoherent and disoriented amidst significant traffic, was swerving out of his traffic lane and veering into oncoming traffic.

15.    Mrs. Smotkin then reached over several times to momentarily steer the vehicle back into the proper lane while continuously screaming at Mr. Smotkin for the next several miles desperately attempting to get Mr. Smotkin to remove the car from the flow of traffic, pull over, and stop the vehicle.

16.    As the family approached a traffic circle, the car nearly struck a pedestrian. At this time, the car had slowed sufficiently that Mrs. Smotkin told their daughter to jump from the veering car, which both Mrs. Smotkin and their daughter did.

17.    Mr. Smotkin continued driving at this reduced rate of speed while Mrs. Smotkin and their daughter ran beside the car hoping for an opportunity to avert a disaster.

18.    Mr. Smotkin eventually pulled the car to the side of the road and Mrs. Smotkin was able to jump into the car and grab the keys from the ignition. Mr. Smotkin was rendered so disoriented and unsteady by the medication that he had difficulty getting out of the car even once

4

it had come to a full stop.  Mr. Smotkin was not even aware that Mrs. Smotkin and his daughter had evacuated the car.

19.    After a call was placed for emergency medical assistance, Mr. Smotkin was taken by ambulance to the emergency room at Sarasota Memorial Hospital.

20.    While being treated at Sarasota Memorial Hospital, Mr. Smotkin was administered IV fluids, an EKG which revealed sinus bradycardia, and a CT of the brain which showed chronic microvascular ischemic change and no definitive evidence of a stroke or TIA.

21.    Mr. Smotkin was discharged after approximately four (4) hours of testing and observation and was instructed to return to the stroke clinic the next day.

22.    On December 23, 2013, according to the previous discharge instructions, Mr. Smotkin returned to Sarasota Memorial Hospital for additional testing at the stroke clinic.

23.    Mr. Smotkin also followed up with his general practice physician, Dr. Linh Bagden, for a comprehensive metabolic examination.

24.    Due to the timing of the episode during the Christmas and New Year holidays, it was very difficult obtaining medical care and attention on short notice and Mr. Smotkin obtained a referral through a family friend in Maryland, Dr. Alan Schulman, to obtain an appointment with neurologist Dean Sutherland, M.D., Ph.D., with Negroski, Sutherland and Hanes where he was seen by Yiliam Clavelo, PA-C.

25.    On December 27, 2013, Mr. Smotkin was examined by Physician Assistant Clavelo, and was then seen at Partners Imaging Center of Sarasota where an MRI of the brain, an MRI of the neck vessels, an MRI of the head blood vessels, and kidney function test were performed.

26.     On December 30, 2013, Mr. Smotkin returned to Dr. Sutherland for a 21 channel digital EEG.  Additionally, on December 30, 2013, an 18 channel, 24-hov digital Ambulatory EEG was performed on Mr. Smotkin by Dr. Sutherland.  The differential diagnosis included vascular etiology such as TIA or stroke vs. seizures, less likely Myasthenia gravis.  Mr. Smotkin was placed on seizure precautions.  Mr. Smotkin was also prescribed an anti-seizure medication, Depakote ER 500 mg at bedtime, preemptively.

27.     Both Mr. and Mrs. Smotkin became increasingly distressed as Mr. Smotkin continued to experience daily episodes during which he became disoriented, experienced double vision, became very unsteady, and suffered partial loss of memory as to events during the periods of disorientation.

28.     Throughout this period of time, Mr. and Mrs. Smotkin were convinced that Mr. Smotkin had a brain tumor or a serious neurological disorder that was either imminently life threatening or would disable him for the rest of his life.  This caused them and other family members to become increasingly terrified and distressed.

29.     As Mr. Smotkin's initial workup had been inconclusive as to the cause of the symptoms he continued to experience daily, Dr. Sutherland suggested that Mr. Smotkin obtain a second opinion through consultation with another neurologist.  Consequently, Mr. Smotkin was seen beginning January 13, 2014, for further workup and a second opinion at Medstar Georgetown University Hospital in Washington, D.C., by neurologist Dr. Gholam Modtamedi. As part of the workup, Mr. Smotkin was kept overnight at Georgetown University Hospital for a brain wave study.  The results again were inconclusive, and Dr. Motamedi then prescribed a five-day seizure monitoring observation protocol for which Mr. Smotkin was admitted to MedStar Georgetown from January 30 through February 4, 2014.

6

30.    During the period of hospitalization at MedStar Georgetown from January 30 through February 4, 2014, Mr. Smotkin was under constant camera and sound observation with sixty (60) electrodes attached to his head.  Part of the hospitalization involved the doctors trying to provoke an actual seizure through the use of noxious stimuli, including strobe lights and other uncomfortable procedures.  Mrs. Smotkin was also instructed that she was required to remain in Mr. Smotkin's hospital room during his entire stay, including sleeping on a bench in the room throughout each night.  Mrs. Smotkin's presence during the 5 days was deemed necessary by Dr. Motamedi's in order to monitor the onset of any unusual behavior by Mr. Smotkin.   Despite the intense 5-day workup, the cause of Mr. Smotkin's recent onset symptomatology and almost daily episodes and altered behavior were still not elucidated.

31.    On February 4, 2014, based on the sequence of events and the timing of the onset of Mr. Smotkin's symptoms, Danielle Smotkin deduced that the cause of this frightening sequence of events might be medication-related.  Upon inspecting the bottle of medication issued by Defendants on December 4, Mrs. Smotkin noted that it appeared that the incorrect medication was in the bottle.

32.    On February 5, 2014, the pills were analyzed by a pharmacist in Sarasota, FL, who confirmed that the pills were not the intended medication but were in fact 12.5 mg Ambien.

33.    On February 13, 2014, Margot Wheeler, M.D., of Medstar Georgetown University Hospital - Division of Internal Medicine, completed and submitted the USFDA MedWatch voluntary report form for voluntary reporting of adverse events, product problems, and product use errors.  As part of the process in completing the MedWatch report, Dr. Wheeler called the CVS pharmacy on Tuckerman Lane to inform the pharmacist of the medication error.

34.     Due to periods of disorientation, double vision, and erratic behavior in addition to extreme fatigue and partial memory loss, Mr. Smotkin was restricted from driving from December 22, 2013, through the completion of his work up on February 4, 2014, as noted by Dr. Motamedi and P.A. Clavelo.

35.     The mental and emotional distress arising from these events as well as the restriction on driving made it impossible for Mr. Smotkin to carry out the duties of his employment which was to assist in raising equity funds for real estate development projects and advisory work, and it was essential to the employment that he remain mentally-focused and able to drive at all times.

36.     As a result of these events, Mr. Smotkin was forced to resign from his employment which included a salary of $150,000.00 per year plus a stipend up to an additional approximately $21,000.00 for health insurance as well as an uncapped contingent interest in development deals for funds raised and projects accomplished.

37.     The employment was in a new field for Mr. Smotkin and was a significant opportunity not easily replicated. He has been unable to return to that or similar employment as a result of these events.

38.     As a direct and proximate result of the aforesaid negligence of Defendants, Mr. Smotkin has suffered loss of earnings and future earning capacity. Mr. Smotkin was forced to resign from his employment as a result of his inability to perform the duties of the employment and he has been unable to return to a similar position. His loss of employment includes at a minimum a period of 6 months constituting a loss of income at a minimum of $75,000.00 plus approximately an additional $10,500.00 of medical insurance reimbursements and an additional 401[k] match.

8

39.     Throughout this sequence of events, Mr. Smotkin was forced to rely on his wife to transport him to all of his appointments, and they were required to travel extensively to obtain treatment from providers in Washington, D.C., and Sarasota, FL.  Mrs. Smotkin was unable to leave Mr. Smotkin unattended and consequently had to forgo her normal activity and commitments during the period of December 22, 2013 until February 5, 2014.  Further, during this period Mr. Smotkin was not taking his normal blood pressure medication which had been deemed necessary by his physician to mitigate his high blood pressure condition.

40.     As a proximate result of the medication error and the extensive treatment necessary to determine what was causing his condition, Mr. Smotkin incurred medical expenses in excess of $55,000.00.

41.     As a proximate result of the medication error and the extensive treatment necessary to address both Mr. and Mrs. Smotkin's subsequent conditions, Mr. and Mrs. Smotkin incurred travel expenses in excess of $2,000.00.

42.     As a proximate result of these events, Mrs. Smotkin experienced severe anxiety, stress, fear, worry about her husband, a sense of helplessness in the face of an unknown diagnosis, and also experienced loss of hair and other injuries and damages.

43.     Defendants owed a duty to the general public and to the Plaintiffs in particular, to use reasonable care in the refilling of prescription medications.

44.     Defendants breached this duty and were negligent in the following respects:

a.     Negligent failure to use due care in filling the prescription for Mr. Smotkin by filling the prescription for Lisinopril with medication that was in fact Ambien 12.5 mg;

9

b.     Negligent failure to use reasonable care to select, train, and supervise pharmacists and other individuals employed by Defendants involved in the issuance of prescription medications in general and the prescription issued for Mr. Smotkin in particular;

c.     Negligent failure to have reasonable procedures and safeguards in place to prevent the issuance of improperly filled prescriptions to customers;

d.     Being otherwise negligent; and

e.     Plaintiffs also rely on the doctrine of *res ipsa loquitur*.

45.     Plaintiffs rely on the doctrine of *respondeat superior* to hold Defendants vicariously liable for the acts and omissions of their employees and/or real and/or ostensible agents, including but not limited to Charles Myers, performed within the scope of employment.

46.     At all times relevant hereto, Plaintiffs Mr. Smotkin and Mrs. Smotkin exercised due care, and were injured through no fault of their own, being at all times free from any acts of contributory negligence.

47.     At all times relevant hereto, Plaintiff Danielle Smotkin, was in the zone of danger.

<u>COUNT I</u>
(MARK SMOTKIN – NEGLIGENCE – INJURY)

48.     Plaintiffs incorporate herein by reference the matters in Paragraphs 1 – 47 of this Complaint as if fully set forth herein.

49.     As a result of the negligence of Defendants set forth herein, Plaintiff Mark Smotkin has sustained injuries and damages, including but not limited to, physical and mental pain and suffering, mental anguish, medical expense, hospital expense, loss of employment, travel expense and other economic and non-economic damages proximately caused by Defendants' negligence.

WHEREFORE, Plaintiff Mark Smotkin demands judgment for damages, interest, and costs in excess of $15,000.00 and any other relief that this Court deems just and proper against Defendants CVS and Maryland CVS, jointly and severally.

**COUNT II**
**(NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS – DANIELLE SMOTKIN)**

50.     Plaintiffs reassert and incorporate by reference the foregoing paragraphs 1 – 49 of this Complaint as if fully set forth herein.

51.     As a proximate result of Defendants' negligent acts and omissions, Plaintiff Danielle Smotkin feared for her life and safety as well as the life and safety of her husband and their daughter.   During the aforesaid events caused by the Defendants' negligent acts and omissions, Plaintiff Danielle Smotkin was in the zone of danger both inside and beside the car and witnessed both the physical effects of the incorrectly filled prescription on Mr. Smotkin and the dangerous driving caused thereby.

52.     As a direct and proximate result thereof, Danielle Smotkin has suffered and will continue to suffer extreme and permanent emotional trauma and mental anguish.   This emotional distress directly and proximately caused physical manifestations which had never previously occurred and which her attending physician attributed to the events caused by Defendants' negligent acts and omissions.   These physical manifestations include but are not limited to increased blood pressure and loss of hair and manifested themselves within a short period of time after witnessing the injury to Mr. Smotkin.

53.     Due to the traumatic series of events caused by the medication error and treatment necessary to address Mrs. Smotkin's subsequently caused injuries and conditions, Mrs. Smotkin incurred medical expenses of $2,039.03.

54.     That as a direct and proximate result of the aforesaid negligence, the Plaintiff Danielle Smotkin has incurred, and shall in the future continue to incur medical expenses, has suffered, and shall continue to suffer great pain, suffering, mental anguish and disability, and was otherwise damaged.

WHEREFORE, Plaintiff Danielle Smotkin demands judgment for damages, interest, and costs in excess of $15,000.00 and any other relief that this Court deems just and proper against Defendants CVS and Maryland CVS, jointly and severally.

<u>COUNT III</u>
**(LOSS OF CONSORTIUM – DANIELLE SMOTKIN)**

55.     Plaintiffs reassert and incorporate by reference the foregoing paragraphs 1 – 54 of this Complaint as if fully set forth herein.

56.     As a proximate result of Defendants negligent acts and omissions, Plaintiff Danielle Smotkin  has sustained the full damages for:

a.     Loss of consortium and other services from her husband Mark Smotkin;

b.     Mental pain and suffering for the serious injuries inflicted upon her husband Mark Smotkin thus causing; and

c.     Loss of support and financial comfort which was furnished by her husband prior to Defendants' negligence causing her husband to lose his employment.

WHEREFORE, Plaintiff Danielle Smotkin demands judgment for damages, interest, and costs in excess of $15,000.00 and any other relief that this Court deems just and proper against Defendants CVS and Maryland CVS, jointly and severally.

<u>JURY DEMAND</u>

Plaintiffs hereby demand trial by jury of all counts herein.

12

Respectfully submitted,

JACKSON & CAMPBELL, P.C.

By:___*/s/ Logan Galbraith Haine-Roberts*_____
     Logan Galbraith Haine-Roberts
     (FL Bar # 0112005)
     Robert N. Kelly (FL Bar # 245119)
     1120th Street, N.W.
     Suite 300 – South Tower
     Washington, D.C. 20036-3437
     Telephone: 202-457-1600
     Facsimile: 202-457-1678
     Email: lroberts@jackscamp.com
     Email: rkelly@jackscamp.com
     *Counsel for Plaintiffs Mark Smotkin and*
     *Danielle Smotkin*

2888887v.1